IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAYATRI GREWAL,               )<br>           Plaintiff  )<br>                     )<br>  vs.                         )<br>                     )<br>                     )<br>UNITED STATES CITIZENSHIP AND   )<br>IMMIGRATION SERVICES (USCIS),   )<br>           Defendant    ) | Civil Action No. 08-1439<br>Chief Judge Gary L. Lancaster/<br>Chief Magistrate Judge Amy Reynolds Hay |

REPORT AND RECOMMENDATION

I.    Recommendation

In her Complaint (Doc.1), the Plaintiff Gaytari Grewal ("Grewal" or "the Plaintiff") challenges the denial of an application to change her nonimmigrant status and the subsequent denial of three Motions to Reopen or Reconsider that decision.[1]  In response, the United States Citizenship and Immigration Services ("USCIS" or "the Defendant") filed a Motion to Dismiss

---

[1] Grewal asserts jurisdiction under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq. (2000), the Declaratory Judgment Act, 28 U.S.C. §2201, and the Mandamus Statute, 28 U.S.C. § 1361.  The government agrees that this Court has jurisdiction under § 704 of the APA considered in conjunction with the federal question statute, 28 U.S.C. §1331.  It bases its position on the analysis applied by the Court of Appeals for the Third Circuit in Pinho v. Gonzales, 432 F.3d 193 (3d Cir. 2005).  Although section 701(a) of the APA precludes judicial review of decisions committed by law to agency discretion, the Court in Pinho noted that determinations regarding whether an applicant has met the eligibility criteria for a status adjustment as set out in the relevant statue and regulations are subject to judicial review.  "To treat all denials of adjustment as discretionary, even when based on eligibility determinations that are plainly matters of law, is to fundamentally misunderstand the relationship between the executive and the judiciary." Id. at 203.  "Determination of *eligibility* for adjustment of status - unlike the *granting* of adjustment itself - is a purely legal question and does not implicate agency discretion." Id (emphasis in original).  Although Grewal's case involves an application for a change rather than an adjustment of status, the Court does not find that this distinction alters Pinho's jurisdictional analysis.  The Defendant's denial of Grewal's application was based on her failure to establish that she was eligible for a change in status.  The Defendants's action was final, adversely affected the Plaintiff, and was based on a non-discretionary determination.  Accordingly, the Court has jurisdiction to review the denial of Grewal's application pursuant to the APA and the federal question statute.  See id. at 200.

the Complaint pursuant to Fed. R. Civ. P.12(b)(6).  The Court respectfully recommends that the Motion to Dismiss (Doc. 9) be granted.

II.     Report

**Background**

This case illustrates the need for exactitude in complying with the laws and regulations governing visa-related immigration matters.  The Plaintiff, a citizen of India, arrived in the United States on April 12, 2001, pursuant to a J-1 visa.  (Doc. 1 ¶ 10).[2]  Prior to expiration of that visa, the Plaintiff, acting pursuant to 8 U.S.C. §1258, filed an "Application for Change of Nonimmigrant Classification" with the USCIS Nebraska Service Center, seeking to have her visa status changed from J-1 to F-1.[3]  This application was filed on July 22, 2003.  (Doc. 1 ¶ 1).

---

[2] 8 U.S.C. §1101(a)(15)(J) specifies that a J-1 visa may be issued to:

> an alien having a residence in a foreign country which he has no intention of abandoning who is a bona fide student, scholar, trainee, teacher, professor, research assistant, specialist, or leader in a field of specialized knowledge or skill, or other person of similar description, who is coming temporarily to the United States as a participant in a program designated by the Director of the United States Information Agency, for the purpose of teaching, instructing or lecturing, studying, observing, conducting research, consulting, demonstrating special skills, or receiving training . . . .

8 U.S.C. §1258(a) grants the Secretary of Homeland Security authority to "authorize a change from any nonimmigrant classification to any other nonimmigrant classification in the case of any alien lawfully admitted to the United States who is continuing to maintain that status . . . ."

[3] 8 U.S. §1101(a)(15)(F), in pertinent part, defines a person entitled to an F-1 visa as:

> an alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study consistent

Relevant regulations establish that an applicant for an F-1 visa must satisfy multiple criteria.  First, she must submit a Student and Exchange Visitor Information System ("SEVIS") Form I-20 issued in her name "by a school approved by the Service for attendance by F-1 foreign students."  8 C.F.R. §214.2 (f)(1)(i)(A).  An applicant must also submit "documentary evidence of financial support in the amount indicated on the SEVIS Form I-20, and must attend school full time . . . ."  8 C.F.R. §214.2 (f)(5).[4]  Last, the applicant for F-1 status must also satisfy a two year foreign residence requirement mandated by 8 U.S.C.A. § 1182(e), or obtain a waiver of that requirement.[5]  Timing is also important.  "An applicant . . . must establish that he or she is eligible for the requested benefit at the time of filing the application."  8 C.F.R. §103.2 (b)(1).  This last requirement may be modified: "If all required initial evidence is not submitted with the application or petition or does not demonstrate eligibility, USCIS in its discretion, may deny the

---

with section 1184(l) of this title at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in a language training program in the United States, particularly designated by him and approved by the Attorney General after consultation with the Secretary of Education, which institution or place of study shall have agreed to report to the Attorney General the termination of attendance of each nonimmigrant student, and if any such institution of learning or place of study fails to make reports promptly the approval shall be withdrawn . . . .

[4] The same regulation states: "Undergraduate study at a college or university . . . consist[s] of at least twelve semester or quarter hours of instruction per academic term . . ."  8 C.F.R. § 214.2(f)(6).  The institution at which the prospective student enrolls must "agree[ ] to report to the Attorney General the termination of attendance of each nonimmigrant student."  8 U.S.C. §1101(a)(15)(F)(i).

[5]Pursuant to 8 U.S.C.A. §1182(e)(iii), "the Attorney General may, upon the favorable recommendation of the Director, waive such two-year foreign residence requirement in any case in which the foreign country of the alien's nationality or last residence has furnished the Director a statement in writing that it has no objection to such waiver in the case of such alien."

application or petition for lack of initial evidence or for ineligibility or request that the missing initial evidence be submitted within a specified period of time as determined by USCIS." Id. at §103.2(b)(8)(ii).

With her application for change of status, Grewal submitted a SEVIS Form I-20 issued by Jefferson College ("Jefferson") on June 30, 2003. (Doc.1 Ex. A; Doc. 10 Attachment at 101). She failed to submit any other required documentation. The SEVIS I-20 Form submitted with her application was cancelled by Jefferson on September 5, 2003, because, for reasons not explained in the record, Grewal failed to enroll. (Doc.1 Ex.5).

On January 2, 2004, USCIS notified Grewal that the information submitted with her application was "not sufficient" to warrant favorable consideration of her change of status application. (Doc.17 Attachment at 1). "Service Records show[ed] that [her] current SEVIS I-20 ha[d] been terminated." ( Id.) Despite the deficiencies in her application, the Defendant exercised its discretion to permit Grewal to submit a new SEVIS I-20 and "a copy of the letter from the Department of State Waiver Review Division that recommended that [she] be granted a waiver of the two year foreign residence requirement" on or before April 15, 2004. (Id.). Grewal was further instructed that she was required "to submit all of the evidence at one time," and that "[s]ubmission of only part of the evidence requested [would] be considered a request for a decision based upon the record. No extension [would] be granted." (Id. at 2).

In response, Grewal, for the first time, applied for a waiver of the foreign residence requirement, and secured a second SEVIS Form I-20, which was issued by Jefferson on February 23, 2004. That form indicated that Grewal was to report for classes no later than August 23, 2004. (Doc.1 Ex. C at 37). On March 18, 2004, the Defendant issued a second Request for

4

Evidence notifying Grewal that in addition to the earlier identified deficiencies in her application, she had failed to submit the required financial information. (Doc. 17 Attachment at 198). The Plaintiff was given until June 10, 2004 to comply with the request.

With a letter dated March 29, 2004, the Plaintiff submitted the "new SEVIS I-20." (Doc.10 Attachment at 192). She notified the Defendant that she had not yet obtained the required foreign residence waiver: "Initially, I was not advised well or misunderstood the procedures for getting a waiver . . . After a false start and considerable time passing while I sorted out the process, I believe I am now proceeding correctly and all is in order to move successfully through the waiver process." (Id.). Although Grewal submitted the other requested information in a timely manner, she did not submit the foreign residence waiver until after the deadline set in the Request for Evidence. Grewal's Application to Waive Foreign Residence Requirements was granted on July 9, 2004 and forwarded to the Defendant.

On October 23, 2004, while Grewal's application was pending, Jefferson cancelled the second SEVIS I-20, "due to [Grewal's] failure to enroll again because [Jefferson] had not received documentation that her waiver had been granted. We could have deferred Ms. Grewal's I-20 at this time had we known that her waiver had been granted." (Doc. 9 Attachment at 101). Grewal did not enroll at Jefferson in August 2004.

Grewal's application for change in status was denied in a USCIS decision issued May 19, 2005. The Defendant explained the basis for the denial as follows: "A review of electronic SEVIS records establishes the SEVIS Form I-20 submitted with your application has been

5

'cancelled' as of October 12, 2004.[6] As such, you have failed to present a valid SEVIS Form I-20 and are, therefore, *statutorily ineligible* for the benefit requested." (Doc. 1 Ex. 3) (emphasis added). The decision also contained the following paragraph:

> A denial of an I-539 may not be appealed. However, an applicant may file a Motion to Reopen or Reconsider in accordance with 8 CFR § 103.5 . . . A motion to reopen or reconsider must state new facts to be proved or reconsidered, and must be supported with affidavits or other documentary evidence and any pertinent precedent decisions.

(Id. ) (footnote added).

After receiving this decision Grewal, claiming that she did not know that her I-20 had been cancelled, sought and secured a third SEVIS Form I-20 from Jefferson. On June 15, 2005, Jefferson requested reinstatement on Grewal's behalf, indicating that she planned to begin classes on August 22, 2005. (Doc.1 Ex. 5; Ex. 8C at 43).

On June 17, 2005, the Plaintiff filed a Motion to Reopen or Reconsider the denial of her application. With that Motion, she included: (1) the letter from Jefferson explaining that an application for reinstatement had been filed; (2) the third SEVIS Form I-20 dated June 15, 2005; (3) a letter to the Defendant from the U.S. Department of State dated May 27, 2007,

---

[6]The Defendant, in an apparent misreading of the record, contends that cancellation of the Form I-20 submitted with Grewal's application was not recorded in the SEVIS system until October 2004, and that cancellation of the original Form I-20 was the basis for the denial of Grewal's application. The remainder of the Defendant's brief focuses on the contention that the Court must assess the adequacy of Grewal's submissions as of the original filing date, June 2003. A close reading of the record establishes, however, that this argument is misplaced; the status of Grewal's documentation at the time of filing was rendered irrelevant because the Defendant, in an attempt to aid Grewal, elected not to deny her application based on the cancellation of her initial Form I-20. Instead, it offered her the opportunity to file a new Form I-20, supply the missing financial documents, and submit a waiver of foreign residence. In doing so, it modified the deadline for compliance. At that point, the relevant inquiry became the adequacy and timeliness of these revised submissions. Thus, it was the second Form I-20 that was cancelled in October 2004; invalidation of this *second* Form I-20 was the basis for Defendant's denial of Grewal's change of status application.

recommending waiver of the two year foreign residence requirement; and (4) an Approval Notice showing a receipt date of June 18, 2004 and a Notice Date of July 9, 2004, granting the waiver.  (Doc. 1 at 10).

On July 25, 2005, the Defendant dismissed the Motion because it was not supported by new evidence or precedent which "established that the decision was incorrect based on the evidence of record at the time."  (Doc. 1 Ex. 6).  The decision also stated that denial of the Motion did not "preclude [Grewal] from contacting a local Citizenship and Immigration Services District Office to explore other options for your situation."  Id.

Grewal contends that the Defendant erred in denying her Motion to Reopen or Reconsider because she did submit new evidence - the reinstatement letter from Jefferson, and the third SEVIS Form I-20 dated June 15, 2005.  (Doc.1 at 10). "By dismissing Plaintiff's Motion in its July 25, 2005 decision, the [Defendant] either failed to look at Plaintiff's new evidence, or recognized the evidence and refused to consider it."  (Doc. 17 at 9).

On August 22, 2005, Grewal filed a second Motion to Reopen or Reconsider the denial of her change of status application.  This Motion included the same evidence submitted with the first Motion and some new evidence.[7]  The argument supporting the Motion was unchanged:

> [E]ven if we assume that Respondent was in fact ineligible to change her nonimmigrant status because her SEVIS Form I-20 was inadvertently cancelled, [her application] should still be reopened and reconsidered because [she] timely filed a reinstatement application and renewed her SEVIS Form I-20 to establish her

---

[7] It appears that this new evidence was a letter from Jefferson, dated August 18, 2005, which was submitted to address the October 2004 cancellation of Grewal's second SEVIS Form I-20.  (Doc.1 Ex. 8C at 47) ("Unfortunately, we cancelled Ms. Grewal's I-20 in October 2004 as opposed to deferring her program start date.")  It is also clear from the letter brief filed by her attorney that the thrust of Grewal's second Motion was that "Jefferson College did not intend to cancel the old I-20.  The cancellation was an inadvertent error . . . ."  (Doc.1 Ex. 8B at 24).

7

> eligibility to change her nonimmigrant status at the time she
> appealed the initial denial of the I-539 application.

<u>Id.</u>

The Defendant, again referencing the standard set out in 8 C.F.R. §103.5, dismissed Grewal's second Motion. (Doc.1 Ex. 7 at 9). In its denial, the Defendant wrote: "It is also noted that your status expired October 23, 2004, the date that electronic SEVIS records indicate that you had been 'cancelled.' Service policy states that an application filed after an alien's authorized period of admission does not have the effect of prolonging the alien's status. Therefore, you are accruing unlawful presence." (<u>Id.</u> at 9-10). Finally, the Defendant informed Grewal that she was not precluded from applying for a new visa. (<u>Id</u>. at 10).

On February 13, 2006, Plaintiff filed a Form I-290 Notice of Appeal with the Nebraska Service Center. This filing was denominated a third Motion to Reopen or Reconsider the Decision of the Defendant issued on January 10, 2006. The Defendant dismissed this Motion as untimely, and cited the Plaintiff's failure to present evidence establishing that its May 2005 decision denying her change of status "was incorrect based on the evidence of record at the time of [that] decision." <u>Id.</u>

The Plaintiff filed this action on October 13, 2008.

**Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S.Ct. 1937, 1949, (2009) (<u>quoting</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

8

alleged." Id. (citing Twombly, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage"; it simply calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." Twombly, 550 U.S. at 556.

In considering the Defendant's Motion, the Court must accept as true allegations in the Complaint and reasonable inferences that can be drawn therefrom, viewing them in the light most favorable to the Plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997). It need not, however, credit mere legal conclusions. Iqbal, 129 S.Ct. at 1949. When deciding a Rule 12(b)(6) motion, the Court may consider the Complaint and any exhibits, matters of public record, and undisputedly authentic documents, as long as the plaintiff's claims are based on those documents. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1992).

Pursuant to the APA, the Court must uphold an agency's action unless it is "arbitrary, capricious" or "unsupported by substantial evidence." 5 U.S.C. §706. See also Soltane v. U.S. Dept. of Justice, 381 F.3d 143, 148 (3d Cir. 2004). The Court will defer to an agency's interpretation of a regulation unless that interpretation is "plainly erroneous or inconsistent with the regulation." United States v. Larionoff, 431 U.S. 864, 872 (1977); see also Rite Aid of Pa, Inc. v. Houston, 171 F.3d 842, 853 (3d Cir.1999) (stating that court will uphold agency's decision in absence of "ideal clarity if the agency's path may reasonably be discerned") (internal citations omitted)).

**Discussion**

Grewal's challenge to the Defendant's May 2005 decision denying her application lacks

merit; it is clear that she failed to satisfy the statutory criteria for a status change, even at the time the decision was made. While her application was pending, her second SEVIS Form I-20 was cancelled. The Defendant was under no obligation to investigate the reasons underlying that cancellation. It concluded correctly that Grewal failed to meet the statutory requirements for and was not entitled to an F-1 visa. The Plaintiff has not provided this Court with any plausible basis for overturning that denial; she has failed to allege facts suggesting the denial itself was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. Consequently, the claims based on the denial of Grewal's application for adjustment of status should be dismissed.

The Court turns next to the two instances[8] in which the Defendant declined to reopen or reconsider its denial of Grewal's application. The grounds upon which a motion to reconsider may be granted are essentially legal; the movant must support is request for reconsideration with "pertinent precedent decisions to establish that the decision was based on an incorrect application of law or Service policy." 8 C.F.R. §103.5(a)(3). Moreover, the movant must show that the decision was incorrect "in light of the evidence of record at the time of the initial decision." Id. Motions to reopen are based upon new evidence or change in factual circumstances. See 8 C.F.R. §103.5(a)(2). Grewal's Motions failed to meet either of the applicable standards.

---

[8] The Court does not consider Grewal's third Motion to Reopen or Reconsider the Defendant's May 2005 denial. It is undisputed that this last motion arrived at the USCIS on a weekend, and was not filed until the following Monday, which fell beyond the filing deadline. The Plaintiff argues that "[e]ven if [this motion was] untimely, Defendants *should have used their discretion*, granted them under 8 C.F.R. §103.5, to excuse this delay as reasonable and beyond the control of the petitioner." (Doc.1 at 12) (emphasis added). 8 C.F.R. §103.5(a)(1)(i) provides that failure to file a motion to reopen or reconsider within the time specified "may be excused at the *discretion* of the Service." Because the decision whether to consider Grewal's third Motion despite its untimeliness lay entirely within the Defendant's discretion, this Court lacks jurisdiction to review it. See Pinho, 423 F.3d at 203 (stating that decisions committed to agency discretion are not subject to judicial review).

Reduced to its essence, her argument with respect to denial of her Motions is this: because she was *eventually* successful in amassing and submitting the documentation required by statute, the Motions should have been granted and her application approved.[9] It is incontestable that at the time the decision on her application was rendered, Grewal did not have in place a valid SEVIS Form I-20. The record does not substantiate Grewal's assertion of "inadvertence" on the part of Jefferson. Instead, it shows that Jefferson had valid grounds for cancelling Grewal's second Form I-20, and, in fact, was legally obligated to do so.

Grewal's argument that she was "fully eligible" to enroll in classes at Jefferson in the fall of 2004 does not negate the fact that she did *not* enroll. On that basis alone, Jefferson was required to cancel the Form I-20. Furthermore, had the Plaintiff even tried to enroll at the time specified in the second Form I-20, she would have learned that Jefferson was unaware that her foreign residence waiver had been approved. She could then have acted to prevent cancellation of the Form. Grewal fails altogether to explain why she herself did not inform Jefferson that a waiver been granted, or how Jefferson might otherwise have known. In sum, Plaintiff has failed to allege any meritorious ground upon which the decision in her case should have been reopened or reconsidered.

III.     Conclusion

For the reasons set out above it is respectfully recommended that the pending Motion to Dismiss (Doc. 9) be granted.

---

[9] Her waiver of foreign residence status was not submitted in a timely manner, and could have provided an alternative basis for the denial of her application. Because the Defendant did not base its decision on this deficiency, we may not rely on it here. See SEC v. Chenery Corp., 332 U.S. 194, 196, (1947)

In accordance with the Magistrates Act, 28 U.S.C. §636(b)(1)(B) & (C), and Local Rule 72.D.2, the parties may file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.

        Respectfully submitted,

        /s/ *Amy Reynolds Hay*
        Chief United States Magistrate Judge

Dated:   4 November, 2009

cc:   Hon. Gary L. Lancaster
     Chief United States District Judge

     Counsel of record via CM-ECF